UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENAE MARIE SABOURIN,
          Plaintiff,                   CIVIL ACTION NO. 12-12784

      v.                        DISTRICT JUDGE PAUL D. BORMAN

                             MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,
          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 9, 13)**

      Plaintiff Renae Marie Sabourin challenges the Commissioner of Social Security's

("Defendant") final denial of her benefits application. Cross motions for summary judgment are

pending (Dkt. Nos. 9, 13). Plaintiff also responded to Defendant's motion (Dkt. No. 14). Judge

Paul D. Borman referred the motions to this Magistrate Judge for a Report and Recommendation

(Dkt. No. 2).

**I.     RECOMMENDATION**

      Because the Administrative Law Judge ("ALJ") did not provide specific reasons for the

weight given to Plaintiff's treating physician's opinion, this Magistrate Judge **RECOMMENDS**

that Plaintiff's motion for summary judgment be **GRANTED**, Defendant's motion for summary

judgment be **DENIED**, and the case be **REMANDED** to the Commissioner.

**II.    DISCUSSION**

      *A.    Framework for Disability Determinations*

      Under the Social Security Act, (the "Act") Disability Insurance Benefits and

Supplemental Security Income are available only for those who have a "disability." *See Colvin*

*v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.    *Standard of Review***

This Court has jurisdiction to review the Commissioner's final administrative decision

pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole.  *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston*, 245 F.3d at 535.  There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record.  *See*

-3-

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotation marks omitted).  Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

## III.   REPORT

### A.    *Administrative Proceedings*

Plaintiff applied for disability and disability insurance benefits on May 19, 2009, alleging she became disabled on October 12, 2007 (Tr. 25).  After the Commissioner initially denied Plaintiff's application, she appeared with counsel for a video hearing before ALJ Charles Headrick, who considered the case *de novo*.  In a written decision, the ALJ found Plaintiff was not disabled (Tr. 25-33).  Plaintiff requested an Appeals Council review (Tr. 20).  On April 23, 2012, the ALJ's decision became the final decision of the Commissioner when the Appeals Council declined further review (Tr. 1-3).

### B.    *ALJ Findings*

Plaintiff was 54 years old on her disability onset date (Tr. 31).  She is a high school graduate and has past relevant work as an automobile production worker and grocery-store cashier (Tr. 32, 43).  The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that she had not engaged in substantial gainful activity since her disability onset date in 2007 (Tr. 27).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: fibromyalgia,[1] cervical radiculopathy[2] and irritable bowel syndrome[3] ("IBS") (Tr. 27).

At step three, the ALJ found no evidence that Plaintiff's impairments met or medically equaled one of the listings in the regulations (Tr. 28).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform the full range of medium work (Tr. 28).[4]

At step four, the ALJ found that Plaintiff could perform her past relevant work as an automobile production worker and grocery-store cashier (Tr. 31). Accordingly, the ALJ found Plaintiff was not disabled.

Assuming Plaintiff could not perform her past relevant work, at step five, the ALJ alternatively found Plaintiff was not disabled, because she could perform a significant number of jobs available in the economy (Tr. 31-32).

### C.   *Administrative Record*

---

[1]Fibromyalgia is pain and stiffness in the muscles and joints. *See Dorland's Illustrated Medical Dictionary*, 711 (31st Ed. 2007).

[2]"Cervical radiculopathy is the clinical description of pain and neurological symptoms resulting from any type of condition that irritates a nerve in the cervical spine (neck)." *See* http://www.spine-health.com/conditions/neck-pain/what-cervical-radiculopathy (last visisted April 3, 2013).

[3]"Irritable bowel syndrome commonly causes cramping, abdominal pain, bloating gas, diarrhea and constipation." *See* http://www.mayoclinic.com/health/irritable-bowel-syndrome/DS00106 (last visited April 3, 2013).

[4]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §404.1567(c).

### 1.      Plaintiff's Hearing Testimony and Statements

Plaintiff retired from General Motors Corporation in 2006, after serving more than 30 years as a production worker (Tr. 41, 58); she has not worked since October of 2007.  Between her retirement date and October of 2007, Plaintiff attempted to rejoin the workforce.  She was briefly employed as a grocery-store cashier but stopped working "[m]ostly because of pain" (Tr. 44).

Plaintiff testified that she has scoliosis;[5] IBS; depression; trouble concentrating; headaches that can last a week; neck and lower back pain; and sore knees and elbows (Tr. 45-47, 55).  She takes several prescription medications for fibromyalgia, pain and depression; her pain medication makes her sleepy.  In the winter, when her pain is particularly bad, Plaintiff says she just lies around the house three or four days a week (Tr. 51-52).

According to Plaintiff, she can lift 10 to 15 pounds, sit and stand 20 to 30 minutes and walk three blocks (Tr. 48).  Plaintiff crochets and cross stitches; she can also dust, cook (occasionally), wash dishes, grocery shop, do laundry, work in her garden, drive and babysit her grandchild a couple days per week (Tr. 48-49, 57-59).  However, she can only be active on her feet for 15 to 30 minutes before needing to take a 20 minute break (Tr. 55-56).

### 2.      Medical Evidence

The medical evidence shows that Plaintiff has a history of scoliosis, arthritis, depression/anxiety, trouble sleeping, fibromyalgia, significant disc herniation causing nerve root compression, slight bulging of the annulus causing minimal foraminal stenosis,[6] neck and arm

---

[5]"Scoliosis is an appreciable lateral deviation in the normally straight vertical line of the spine."  *See Dorland's Illustrated Medical Dictionary*, 1706 (31st Ed. 2007).

[6]Foraminal stenosis is a narrowing of the spinal canal, causing pain that radiates into the lower extremity and can be accompanied by numbness and tingling, muscle weakness and loss of reflexes.  *See* http://www.laserspineinstitute.com/back_problems/foraminal_stenosis (last visited

pain, numbness in her left hand, shoulder pain, daily headaches and IBS (Tr. 180, 194, 196, 314).

Plaintiff saw her treating physician, Dr. David K. Vallance, on November 2, 2007, February 2, 2008, September 11, 2008, February 6, 2009, June 15, 2009, November 16, 2009, March 8, 2010 and January 17, 2011 with complaints of fibromyalgia and osteoarthritis[7] (Tr. 217, 221, 225, 229, 231, 317, 338, 341).[8]  Until Plaintiff's last visit on January 17, 2011, Dr. Vallance opined that her cervical spondylosis,[9] insomnia, IBS, cervicalgia,[10] myalgia[11] and myositis,[12] fibromyalgia and neck pain were improving, and her hypothyroidism[13] was controlled (Tr. 218, 222, 226, 230, 232, 318, 342).  On January 17, 2011, Dr. Vallance determined that Plaintiff's cervical spondylosis, IBS, myalgia and myositis and neck pain were

_____

April 4, 2013).

[7]Osteoarthritis is "a noninflammatory degenerative joint disease . . . characterized by degeneration of the articular cartilage, hypertrophy of bone at the margins, and changes in the synovial membrane.  It is accompanied by pain, usually after prolonged activity, and stiffness, particularly in the morning or with inactivity."  *See Dorland's Illustrated Medical Dictionary*, 1365 (31st Ed. 2007)

[8]Dr. Vallance indicated that he treated Plaintiff for 10 years (Tr. 321).

[9]Cervical spondylosis is a "degenerative joint disease affecting the cervical vertebrae, intervertebral disks, and surrounding ligaments and connective tissue, sometimes with pain or paresthesia radiating along the upper limbs as a result of pressure on the nerve roots."  *See Dorlands Illustrated Medical Dictionary*, 1780 (31st Ed. 2007).

[10]"Cervicalgia is neck pain that occurs toward the rear or the side of the cervical vertebrae."  *See* http://www.laserspineinstitute.com/back_problems/neck_pain/overview/cervicalgia (last visited April 5, 2013).

[11]Myalgia is muscle pain.  *See Dorlands Illustrated Medical Dictionary*, 1233 (31st Ed. 2007).

[12]Myositis is the "inflammation of a voluntary muscle."  *See Dorlands Illustrated Medical Dictionary*, 1244 (31st Ed. 2007).

[13]Hypothyroidism is the "deficiency of thyroid activity, characterized by decease in basal metabolic rate, fatigue, and lethargy[.]"  *See Dorlands Illustrated Medical Dictionary*, 920 (31st Ed. 2007).

"uncontrolled" (Tr. 339). He also found that Plaintiff could not tolerate any stress; needed unscheduled breaks; could only walk three city blocks; needed to sit, stand and walk at will; would be absent from work more than four days per month; could only sit for four hours in an eight-hour workday; stand less than two hours in an eight-hour workday; occasionally lift less than 10 pounds and climb stairs; rarely lift 10 pounds, twist, stoop and crouch; never lift 20 or 50 pounds; and never climb ladders (Tr. 322-324). Finally, beginning with Plaintiff's visit on November 16, 2009, Dr. Vallance found that Plaintiff only had marginal pain control and was very tired (Tr. 319, 340, 343).

On August 25, 2009, Dr. Troy Burk indicated that Plaintiff possibly has disc protrusion or herniation, radiculopathy bilaterally in the upper extremities and moderate osteoarthritis in her spine (Tr. 284). Dr. Burk concluded that employment for Plaintiff would be "near impossible," because she could not stand or sit for long periods of time (Tr. 284).

On September 11, 2009, Plaintiff visited Dr. R. Scott Lazzara with complaints of fibromyalgia, scoliosis and spastic bowel[14] (Tr. 285). Dr. Lazzara found Plaintiff had normal concentration; could do range of motion exercises; and had no trouble walking, squatting or hopping. She could sit and stand approximately one hour and lift approximately 15 pounds (Tr. 285-286). Dr. Lazzara diagnosed Plaintiff with arthralgias,[15] fibromyalgia and mild degenerative arthropathy[16] in her neck and back (Tr. 287).

_____

[14]Spastic bowel is the same as IBS. *See* http://www.mayoclinic.com/health/spastic-colon/AN00498 (last visited April 5, 2013).

[15]Arthralgias is joint pain. *See* http://jointachesandpains.org/what-is-arthralgias (last visited April 5, 2013).

[16]Arthropathy is a joint disease. *See Dorlands Illustrated Medical Dictionary*, 160 (31st Ed. 2007).

On October 1, 2009, George Starrett, Ed.D. completed a Psychiatric Review Technique form which indicated Plaintiff had sleep disturbance; decreased energy; feelings of guilt or worthlessness and mild difficulty maintaining concentration, persistence or pace (Tr. 291, 298).

On March 19, 2010, Plaintiff complained of moderate to severe fibromyalgia, mild to moderate gastroesophageal reflux disease (GERD), insomnia, depression, heartburn, increased fatigue and poor memory (Tr. 333).

### 3.      Vocational Expert

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual of Plaintiff's age, education and work experience who could perform the full range of medium work (Tr. 60).  The VE testified that such an individual could perform Plaintiff's past relevant work and the full range of medium, light and sedentary work (Tr. 61-62).  However, the VE also testified that the individual would be precluded from work, if the ALJ found Plaintiff's testimony credible and substantially verified by the medical evidence (Tr. 62).  According to the VE, an employer allows two 15-minute breaks, one 30-minute to an hour lunch break, and only one absence a month (Tr. 62-63).

### D.      *Plaintiff's Claims of Error*

Plaintiff argues that the ALJ erred by failing to: (1) give controlling weight to her treating physician's opinion; (2) account for the effect of her IBS; and (3) adequately address her limitations in maintaining concentration, persistence or pace.

### 1.      Treating Source Rule

The Sixth Circuit recently explained the weight an ALJ must afford medical sources:

Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).

The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

*Gayheart v. Comm'r of Soc. Sec.*, 2013 WL 896255 at *9 (6th Cir. March 12, 2013). Here, the

ALJ accorded "limited weight" to Dr. Vallance's opinion:

An office visit note by Melissa Van Sickle, M.D. stated that [Plaintiff's] fibromyalgia pain was relieved by exercise, heat, ice, massage, medications, and stretching. If [Plaintiff] can exercise and stretch as well as perform household chores and take care of a young grandchild, it is reasonable to conclude that her limitations are not as severe as both she and Dr. Vallance described them. At the hearing, [Plaintiff] testified that she could walk for just three blocks. Yet, in Dr. Lazzara's report, she denied having any problem walking. She was able to squat and hop and she performed orthopedic maneuvers. Her allegation of fibromyalgia was unsupported by any active trigger points.

Until January 2011, Dr. Vallance's follow-up notes indicate [Plaintiff's] diagnoses were all improving. Then, just two weeks before her hearing, he suddenly described the same diagnoses as "uncontrolled." In his fibromyalgia questionnaire dated January 17, 2011, Dr. Vallance assigned [Plaintiff] strict physical restrictions. He opined that she was incapable of even low stress jobs and that she could be expected to take multiple unscheduled breaks and miss four or more workdays a month. However, until his January 17, 2011 report, Dr. Vallance was saying her fibromyalgia, irritable bowel syndrome, and other impairments were improving.

Therefore, the undersigned can give only limited weight to Dr. Vallance's fibromyalgia questionnaire responses. Although he is a treating physician, Dr. Vallance is not necessarily entitled to controlling weight. 20 CFR 404.1527

-10-

states, in pertinent part, that the opinions of treating physicians are given
controlling weight in determining disability when they are well supported by
medically acceptable clinical and diagnostic techniques and are not inconsistent
with the other substantial evidence.  A statement by a medical source that you are
"disabled" or "unable to work" does not mean that you will be found disabled and
while these opinions cannot be disregarded, they can never be entitled to
controlling weight.  In this case, the preponderance of Dr. Vallance's records
does[sic] not lend credence to the conclusions he makes in his questionnaire.

(Tr. 30-31).  The ALJ supported his decision for not affording Dr. Vallance's opinion controlling

weight: he determined that Dr. Vallance's opinion was inconsistent with the other evidence in

the case record, his prior treatment notes, and Plaintiff's hearing testimony about her physical

limitations.  Thus, the ALJ was not required to give Dr. Vallance's opinion controlling weight.[17]

But, this does not end the analysis:

when "the opinion of a treating source is not accorded controlling weight, an ALJ
must apply certain factors – namely, the length of the treatment relationship and
the frequency of examination, the nature and extent of the treatment relationship,
supportability of the opinion, consistency of the opinion with the record as a
whole, and the specialization of the treating source – in determining what weight
to give the opinion."  *Wilson*, 378 F.3d at 544.  Additionally, "a decision denying
benefits 'must contain specific reasons for the weight given to the treating
source's medical opinion, supported by the evidence in the case record, and must
be sufficiently specific to make clear to any subsequent reviewers the weight the
adjudicator gave to the treating source's medical opinion and the reasons for that
weight.'"  *Id.* (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996)).

*Beardsley v. Comm'r of Soc. Sec.*, No. 12-cv-11167, 2013 WL 1118009 at *3 (E.D. Mich. March

18, 2013).  Here, "[t]he ALJ's decision fails to provide clear reasoning for the weight assigned

[Dr. Vallance's] opinion, and does not discuss what impact the above listed factors had on the

assessment other than minimally addressing the consistency of the opinion with the whole

record."  *Id.*  Specifically, the ALJ failed to consider Dr. Vallance's 10-year treatment

relationship with Plaintiff; the number of times Dr. Vallance treated Plaintiff; the treatment he

---

[17]However, on remand, the ALJ should discuss why he does not believe Plaintiff's
diagnoses can be "improving" yet still be "uncontrolled."

provided; the kinds and extent of examinations performed or ordered from specialists and

independent laboratories; whether Dr. Vallance's opinion was supported by medical signs and

laboratory findings; and whether Dr. Vallance is a specialist.  "[F]ailure to follow the procedural

requirement of identifying the reasons for discounting [Dr. Vallance's opinion] and for

explaining precisely how those reasons affected the weight accorded [Dr. Vallance's opinion]

denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified

based upon the record."  *Rogers*, 486 F.3d at 243.

   Notably, the ALJ's failure to comply with the regulations was not a harmless error

because the record does not establish that: (1) despite the ALJ's failure to comply with the terms

of 20 C.F.R. § 404.1527(c)(2), he otherwise met the regulation's goal; (2) Dr. Vallance's opinion

was so "patently deficient" that it could not possibly be credited; (3) the ALJ adopted Dr.

Vallance's opinion; or (4) the ALJ made findings consistent with the opinion.  *See Wilson*, 378

F.3d at 547.

   This case should be remanded for the ALJ to address the reasons for the weight assigned

to Dr. Vallance's opinion.


### 2.   Effect of IBS on Plaintiff's Ability to Work

   Plaintiff next argues that the ALJ failed to adequately address the effect IBS has on her

ability to work.

   A diagnosis alone does not indicate the functional limitations caused by an impairment.

*See Young v. Sec'y of HHS*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Cagle v. Astrue*, 2012

WL 3201960 at *6 (E.D. Tenn. July 16, 2012):

> When a Plaintiff attempts to establish disability based on subjective complaints,
> she must provide objective medical evidence of an underlying medical condition
> that either confirms the severity of the alleged symptoms or indicates the

condition reasonably could be expected to cause symptoms as severe as alleged. 20 C.F.R. § 404.1529; *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  If the objective medical evidence alone does not confirm the allegations of disabling symptoms, the ALJ must evaluate all other evidence to determine to what extent, if any, the alleged symptoms limit the claimant's work capacity.  *See* 20 C.F.R. § 404.1529(c)(3).  "The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis."  *Walters*, 127 F.3d at 531.

Plaintiff complained of frequent bathroom use, but she failed to prove she was precluded from employment due to the need to take several unscheduled breaks and frequently miss work. The medical evidence shows Plaintiff's IBS was consistently improving (until Plaintiff's January 17, 2011 visit with Dr. Vallance), the ALJ stated that he "considered all symptoms and the extent to which the[] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" (Tr. 28), and the only objective evidence that Plaintiff needed several unscheduled breaks and would miss more than four workdays per month was Dr. Vallance's opinion, which the ALJ reasonably found was not entitled to controlling weight. Importantly, Dr. Vallance's opinion was not based solely on Plaintiff's IBS; it was a combination of her impairments.

The ALJ's decision should not be disturbed on appeal.

### 3.      Limitations in Maintaining Concentration, Persistence or Pace

Plaintiff's final argument is that the ALJ failed to adequately address her limitations in maintaining concentration, persistence or pace.  Plaintiff's argument lacks merit; she only has *mild* – as opposed to moderate – difficulty maintaining concentration, persistence or pace, which does not denote any work-related limitations.  *See Jeter v. Comm'r of Soc. Sec.*, No. 12-10591, 2013 WL 1281880 at *6 n.5 (E.D. Mich. Feb. 6, 2013) ("[m]oderate deficiencies in [concentration, persistence or pace] represent substantial limitations which must be acknowledged in the hypothetical question") (citations omitted).

-13-

The ALJ's decision should not be disturbed on appeal.

## IV.    CONCLUSION

Because the ALJ did not provide specific reasons for the weight given to Dr. Vallance's opinion, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, Defendant's motion for summary judgment be **DENIED**, and the case be **REMANDED** to the Commissioner.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *See McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office.  *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing.  *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  *See* E.D. Mich. LR 72.1(d)(3), (4).

s/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

Dated:  April 10, 2013

<u>*Certificate of Service*</u>

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, April 10, 2013, by electronic and/or ordinary mail.*

<u>*s/Eddrey Butts*</u>
*Acting Case Manager for Magistrate Judge Randon*